[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 91.]

LORAIN COUNTY BAR ASSOCIATION *v.* PAPCKE.

[Cite as *Lorain Cty. Bar Assn. v. Papcke*, 1998-Ohio-452.]

*Attorneys at law—Misconduct—Eighteen-month suspension with twelve months of the sanction stayed on conditions—Conduct involving moral turpitude— Conduct involving dishonesty, fraud, deceit, or misrepresentation— Conduct adversely reflecting on fitness to practice law—Neglect of an entrusted legal matter—Failing to cooperate in a disciplinary investigation.*

(No. 97-1739—Submitted October 20, 1997—Decided February 18, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-84.

————————————

{¶ 1} On October 15, 1996, relator, Lorain County Bar Association, filed a five-count complaint charging respondent, Mary E. Papcke of Grafton, Ohio, Attorney Registration No. 0010560, with several disciplinary violations. After respondent filed her answer, the parties stipulated that counts four and five would be withdrawn. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") conducted a hearing on the three remaining counts on May 16, 1997. The panel found with respect to count one that in September 1994, Sharon Brown paid respondent a retainer of $910 to file a divorce action. Although Brown was unable to contact respondent for several months, during that time respondent twice notarized her secretary's signing of Brown's name, without seeing Brown or asking her whether she had authorized the secretary to sign her name. In December 1994, respondent told Brown that the divorce was filed; however, respondent did not file the divorce until February 1995. When shortly thereafter Brown found that the case had just been filed, she

discharged respondent and hired other counsel, who secured the divorce at additional financial loss to Brown.

**{¶ 2}** The panel found with respect to count two of the complaint that respondent did not reply to relator's October 1995 notice of investigation of the Brown matter until April 1996, when she received relator's notice of intent to file a complaint. Respondent then refunded $910 to Brown, responded to relator's inquiries by letter, and later appeared at a hearing before relator concerning the grievance.

**{¶ 3}** The panel found that relator failed to establish facts to support count three, and dismissed that count.

**{¶ 4}** The panel did not reach specific conclusions with respect to any particular disciplinary violations; however, relator had alleged that respondent's conduct with respect to count one violated DR 1-102(A)(3) (conduct involving moral turpitude), 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (conduct adversely reflecting on the fitness to practice law), and 6-101(A)(3) (neglect of an entrusted legal matter), and that respondent's conduct with respect to count two violated Gov.Bar R. V(4)(G) (failure to cooperate in a disciplinary investigation).

**{¶ 5}** After receiving mitigation evidence regarding respondent's industriousness and good character, the panel recommended that respondent be suspended from the practice of law for eighteen months with twelve months of the suspension stayed on condition that respondent continue the treatment she had begun with mental health professionals, with reports every ninety days; further, that respondent select supervising attorneys in the practice areas of criminal law and domestic relations and that the attorneys submit reports to the board at intervals of six, twelve, and seventeen months after the imposition of the sanction; and finally, that during the stayed period respondent complete one seminar in law office

management or one seminar in time and stress management. The board adopted the findings, conclusions, and recommendations of the panel.

_____

*Daniel A. Cook*, for relator.

*James M. Burge* and *Harlan Stone Hertz,* for respondent.

_____

***Per Curiam.***

{¶ 6} We adopt the findings of the board and conclude that respondent violated DR 1-102(A)(3), (4), and (6), 6-101(A)(3), and also Gov.Bar R. V(4)(G). Neglect of client matters and misleading clients into believing that their cases were filed and attended to warrant a suspension. *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237. Respondent's failure to act in this case is compounded by her failure to cooperate in the disciplinary investigation. As we said in *Akron Bar Assn. v. Barnett* (1997), 80 Ohio St.3d 269, 270, 685 N.E.2d 1230, 1231, we are troubled by those attorneys who are unwilling to cooperate in a disciplinary investigation.

{¶ 7} We are also troubled by respondent's misuse of her powers as a notary public. Attorneys in this state have the privilege of retaining their office as notary so long as they remain in good standing with this court and are residents of Ohio or maintain a place of business here. R.C. 147.03. Documents acknowledged by them are self-authenticating. Evid.R. 902(8); Fed.R.Evid. 902(8). A notary who certifies to the affidavit of a person without administering the oath or affirmation to that person as required by R.C. 147.14 is subject to a fine of up to $100 or imprisonment of up to thirty days, or both. R.C. 147.99(B).

{¶ 8} In view of the importance of the notary's acknowledgment and the statutory penalties, lawyers must not take a cavalier attitude toward their notary responsibilities and acknowledge the signatures of persons who have not appeared before them. The principle involved is similar to that in *Cuyahoga Cty. Bar Assn.*

*v. Petrancek* (1996), 76 Ohio St.3d 571, 669 N.E.2d 828, when an attorney for an executor had his client sign documents in blank to be completed later. In *Petrancek* we said that the attorney implied that "the stringent requirements of fiduciary responsibility are mere formalities." *Id.* at 574, 669 N.E.2d at 830. So, here, respondent would lead her client to believe that the statutory duty of a notary public is inconsequential.

{¶ 9} Beyond the fact that these activities are a fraud on the court where the documents are filed and on all those who rely on such documents, this casual attitude toward statutory requirements breeds disrespect for the law and for the legal profession. Lawyers, whether they are in open court or in their offices drafting documents or taking acknowledgments, have a duty to maintain high standards of professional conduct. "Respect for the law and our legal system, through both an attorney's words and actions, should be more than a platitude." *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 16, 655 N.E.2d 1299, 1301. If lawyers do not respect the law, we cannot expect others to respect lawyers or the law.

{¶ 10} In this case, we suspend respondent from the practice of law for eighteen months, but we stay twelve months of the suspension on condition that respondent continue the treatment she has begun with mental health professionals, with reports every ninety days; further, that respondent select supervising attorneys in the practice areas of criminal law and domestic relations and that those attorneys submit reports to the relator at intervals of six, twelve, and seventeen months after the imposition of this sanction; and, finally, that during the stayed period respondent complete a seminar in law office management or a seminar in time and stress management.

{¶ 11} Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

January Term, 1998

_____