OFFICE OF DISCIPLINARY COUNSEL *v.* SHAFFER.

[Cite as *Disciplinary Counsel v. Shaffer,*
98 Ohio St.3d 342, 2003-Ohio-1008.]

(No. 2002–1475—Submitted January 7, 2003—Decided March 19, 2003.)

**Per Curiam.**

{¶ 1} Respondent, John S. Shaffer of Bryan, Ohio, Attorney Registration No. 0001925, was admitted to the practice of law in Ohio in 1981. On October 8, 2001, relator, Disciplinary Counsel, filed a complaint charging respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, on the parties' stipulations and evidence, made the following findings.[1]

{¶ 2} In November 1998, a client retained respondent to arrange for the sale of real estate belonging to the client's grandmother. The grandmother had been incapacitated by a stroke in August 1997 and was at the time residing in a nursing home. The client had previously sold parcels of his grandmother's property to pay for her care pursuant to what he believed to be his authority under a power of attorney that another attorney had prepared in 1993.

{¶ 3} Apparently because his grandmother's living expenses required the sale of additional parcels, the client found another buyer in March 1999. Respondent facilitated the sale by preparing the purchase agreement and conducting a title search. In the process, respondent discovered that the 1993 power of attorney expressly prohibited his client from transferring property on the client's grandmother's behalf.

{¶ 4} Respondent told his client of the problem with the power of attorney and asked whether his grandmother could sign a new power of attorney that included authority to transfer property. The client reported that his grandmoth-

---

1. The parties agreed to a hearing by two of the three appointed panel members when one panel member was unable to attend the hearing.

er was incapacitated, but assured respondent that his grandmother and he had always intended that he have authority, via the power of attorney, to sell property as necessary to pay her expenses.

{¶ 5} In June 1999, respondent and his client visited the grandmother so that respondent could assess her competence. When it became clear that the grandmother could not execute a new power of attorney, respondent provided a power of attorney that he had recently prepared but that bore the date June 19, 1997, a date prior to the grandmother's stroke. Respondent then instructed his client to sign his grandmother's name on the signature line. The client did as he was told.

{¶ 6} In advising his client to sign for the client's grandmother, who may have been incapacitated but had not been declared legally incompetent, respondent counseled his client to commit forgery on the new power of attorney. Respondent went on to fraudulently authenticate the signature by signing as a witness, notarizing it, and backdating the jurat to June 19, 1997. Later at his office, respondent also instructed his secretary to sign the power of attorney as a second witness to the forged signature. Respondent then helped his client close on the property, including representing that the title was marketable. On July 22, 1999, respondent filed the new power of attorney in the county recorder's office, along with the deed evidencing the sale.

{¶ 7} The parties stipulated and the panel found that respondent had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 7–102(A)(7) (counseling or assisting a client in conduct that the attorney knows to be fraudulent or illegal). In recommending a sanction, the panel was impressed with the quality and number of written testimonials about respondent's integrity, professional competence, and contributions to his local bar and community. In addition to these letters, several judges and attorneys testified as character witnesses at the hearing. Respondent apologized for his misconduct, accepted complete responsibility for it, cooperated in the disciplinary proceedings, had no prior disciplinary record, and did not profit from his actions, which he claims to have engaged in solely to advance the combined interests of his client and the client's grandmother. Respondent has also agreed to be financially responsible to buyers for expenses incurred to clear title to property transferred pursuant to the forged power of attorney.

{¶ 8} In light of these many mitigating circumstances and with his assurance that his infraction was an isolated incident, respondent urged the panel not to recommend a sanction that involved an actual suspension from the practice of law. However, because respondent illegally secured a forged signature and notarized and recorded the document bearing the forgery, the panel recommended, consistent with relator's suggestion, a one-year suspension, with six

months stayed. The board adopted the panel's findings of misconduct and recommendation.

{¶ 9} We agree that respondent violated DR 1–102(A)(4) and 7–102(A)(7) and also that a one-year suspension from the practice of law, with six months to be stayed on conditions, is a commensurate sanction.

{¶ 10} Respondent continues to argue that his misconduct, while deserving of discipline, does not warrant an actual suspension. He contends that his was a single act of dishonesty and, as such, does not constitute the kind of course of deceitful conduct for which *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus, requires the actual suspension of an attorney's license. Moreover, because his misconduct was the result of an isolated incident, respondent maintains that the mitigating circumstances should be sufficient justification for a less severe sanction, a six-month or one-year suspension, all stayed with probation.

{¶ 11} When an attorney's violation of a Disciplinary Rule involves forgery or falsification, we have, as respondent submits, tempered our disposition according to whether the case presents an isolated incident in an otherwise unblemished legal career or the more egregious course of conduct. For example, we publicly reprimanded the attorney in *Cincinnati Bar Assn. v. Thomas* (2001), 93 Ohio St.3d 402, 754 N.E.2d 1263, because on a single occasion she signed her client's name on a divorce document and improperly notarized the signature. The attorney had received telephone signature authority from her client; however, she made the mistake of representing the client's signature as genuine. In *Cincinnati Bar Assn. v. Reisenfeld* (1998), 84 Ohio St.3d 30, 701 N.E.2d 973, we publicly reprimanded one attorney and suspended another for six months, with the entire suspension stayed, because they had completed affidavits for several different clients, one of which the more severely sanctioned attorney completed inaccurately, by using and then notarizing stale signatures.

{¶ 12} Respondent maintains that there is no difference between these cases and his attempt to help a client transfer property so that the client could use the proceeds for a legitimate purpose. Relator, however, insists that respondent engaged in a course of conduct in that he "devised and executed a scheme" for his client to circumvent, through forgery, falsifications, and illicit filing, a legally binding prohibition against the sale of certain property. We agree.

{¶ 13} Respondent's misconduct manifests a course of conduct because he planned and administered a multistep process to defraud. Respondent may have genuinely hoped to serve his client by helping him avoid the expense of establishing a guardianship; however, he nevertheless perpetrated fraud on the court system and public by sidestepping safeguards in place to protect sellers and buyers of real estate. We find this case comparable to *Disciplinary Counsel v.*

*Bandy* (1998), 81 Ohio St.3d 291, 690 N.E.2d 1280, in which an attorney induced a secretary to falsely attest that she had witnessed a will before the client's death and then filed the will in probate court, all in a misguided plan to validate the will long after execution. In *Bandy,* we stayed eighteen months of the two-year suspension ordered in that case but imposed an actual six-month suspension of the attorney's license because he, too, had engaged in a course of conduct designed to defraud.

{¶ 14} In accordance with *Fowerbaugh* and *Bandy,* respondent's misconduct warrants the sanction recommended by the board. Respondent is therefore suspended from the practice of law for one year, but six months of this sanction are suspended on the condition that he commit no further violations of the Disciplinary Rules. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, BROWN, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

SUSAN BROWN, J., of the Tenth Appellate District, sitting for COOK, J.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Kevin L. Williams, Assistant Disciplinary Counsel, for relator.

Charles W. Kettlewell & Associate, Charles W. Kettlewell and Charles J. Kettlewell, for respondent.