**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Warren Cty. Bar Assn. v. Vardiman,* **Slip Opinion No. 2016-Ohio-352.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-352

WARREN COUNTY BAR ASSOCIATION *v.* VARDIMAN.

CINCINNATI BAR ASSOCIATION *v.* VARDIMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Warren Cty. Bar Assn. v. Vardiman,* Slip Opinion No. 2016-Ohio-352.]**

*Attorney misconduct—Violations of the Rules of Professional Conduct, including knowingly making a false statement of fact or law to a tribunal, knowingly offering evidence that the lawyer knows to be false, and engaging in conduct that is prejudicial to the administration of justice—One-year suspension with six months stayed on conditions.*

(No. 2015-0589—Submitted June 10, 2015—Decided February 3, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-027.

_____

**Per Curiam**.

{¶ 1} Respondent, Edwin Lowe Vardiman Jr. of Cincinnati, Ohio, Attorney Registration No. 0070574, was admitted to the practice of law in Ohio in 1999.[1] On December 3, 2007, we suspended Vardiman for failing to register for the 2007/2009 biennium. *In re Attorney Registration Suspension of Vardiman*, 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305. We reinstated his license to practice law on December 28, 2007. *In re Reinstatement of Vardiman*, 2008-Ohio-1397, 883 N.E.2d 464.

{¶ 2} On April 7, 2014, a probable-cause panel of the Board of Commissioners on Grievances and Discipline[2] certified to the board a complaint filed against Vardiman by relator Warren County Bar Association, alleging that Vardiman committed multiple ethical violations by improperly signing the name of the opposing party in a custody matter, who was not represented by counsel, to four separate documents and then filing those documents in the juvenile court.

{¶ 3} On October 8, 2014, relator Cincinnati Bar Association filed a separate complaint in the existing case, alleging that Vardiman engaged in additional misconduct in the execution of a will and power of attorney that he prepared for a client by signing as a witness and then falsely signing the name of a second witness to both documents.

{¶ 4} Before the hearing on these matters, Vardiman filed admissions of fact to both complaints and admitted that his conduct in each matter constituted one or more violations of the Ohio Rules of Professional Conduct. A panel of the board conducted a hearing and issued a report finding that Vardiman committed all but one of the alleged violations. But finding that his recently diagnosed and causally

---

[1] Vardiman was also admitted to the Kentucky Bar by motion on June 3, 2005, but he has been suspended in that jurisdiction since January 31, 2008, for his failure to comply with continuing-legal-education requirements.

[2] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

related attention-deficit/hyperactivity disorder ("ADHD"), his cooperation in the disciplinary proceeding, and his positive character evidence qualified as mitigating factors, the panel recommended that Vardiman be suspended from the practice of law for one year with six months stayed on conditions.

{¶ 5} The board adopted the panel's findings of fact and misconduct and also found that Vardiman's misconduct was sufficiently egregious to warrant finding a separate violation of Prof.Cond.R. 8.4(h). No objections have been filed. We adopt the board's report in its entirety and suspend Vardiman from the practice of law for one year with six months stayed on conditions.

## Misconduct

### *Warren County Bar Association Complaint*

{¶ 6} Vardiman represented a father who sought to reduce his child-support obligation in a proceeding before the Warren County Court of Common Pleas, Juvenile Division. Vardiman prepared the initial shared-parenting plan, and after obtaining the signature of the mother, who was not represented by counsel, he submitted the document to the court. After the court's compliance officer returned the shared-parenting plan for corrections, Vardiman prepared a revised shared-parenting plan and sent it to the mother with other documents, including an agreed entry, an application for child-support services, and a child-support-computation worksheet. He later submitted the documents to the court, but the court rejected them.

{¶ 7} Vardiman submitted a second revised shared-parenting plan and related documents to the court on March 11, 2013. At a May 2013 pretrial hearing, the magistrate asked the mother whether she had signed the shared-parenting plan, and she replied that she had not. Vardiman then admitted that he had signed the mother's name to the second revised shared-parenting plan and submitted it to the court. When asked why he had done so, he replied, "[P]urely timing[,] Your Honor."

{¶ 8} During his cross-examination at the disciplinary hearing, Vardiman admitted that he had also signed the mother's name without authority on the agreed entry, the application for child-support services, and the child-support-computation worksheet that he had submitted to the court—though he did not disclose these fraudulent signatures in his written admissions of fact. Vardiman also admitted that his client had informed him at least one day before the May 2013 pretrial hearing that the mother had discovered the forgeries—but he did not report his conduct to the court before the pretrial hearing. When asked why he had forged the signatures, Vardiman testified that his client had become anxious "because it was taking a long time to get the documents prepared."

{¶ 9} The panel found that Vardiman violated Prof.Cond.R. 4.3 (prohibiting a lawyer from giving legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of the unrepresented person are in conflict with the interests of the client), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.3(a)(3) (prohibiting a lawyer from knowingly offering evidence that the lawyer knows to be false), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). But the panel did not believe that an alleged violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) had been proven by clear and convincing evidence.

{¶ 10} The board adopted the panel's findings of fact and misconduct but also found that Vardiman's dishonesty and submission of documents containing forged signatures to a tribunal were sufficiently egregious to warrant a finding that he violated Prof.Cond.R. 8.4(h) as charged in the Warren County Bar Association's

complaint. We adopt the board's findings of fact and misconduct with respect to this count.

### *Cincinnati Bar Association Complaint*

{¶ 11} Vardiman admits that Harold Williams retained him to prepare a will and power of attorney, that Williams signed those documents on October 18, 2013, and that Vardiman signed his own name to both documents as a witness. Vardiman also admits that he signed the name Sandra J. Sink as a second witness and that he had no authority to do so. Further, Vardiman admits that his conduct violated the Ohio Rules of Professional Conduct and that it was harmful not only to his client but also to the public. The panel and board found that Vardiman's conduct in this matter violated Prof.Cond.R. 8.4(b) and 8.4(c). We adopt the board's findings of fact and misconduct with regard to this count.

### Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13).

{¶ 13} In mitigation, the board found that, with the exception of a 25-day attorney-registration suspension attributed to an oversight, Vardiman did not have a prior disciplinary record, that he made full and free disclosure to the board, and that he presented positive character evidence. *See* Gov.Bar R. V(13)(C)(1), (4), and (5).

{¶ 14} In April 2014, Vardiman participated in an Ohio Lawyers Assistance Program ("OLAP") evaluation and entered into a three-year OLAP mental-health contract that required him to see a licensed mental-health professional. At his deposition, Todd Walker, Psy.D., a clinical psychologist, testified that he evaluated Vardiman pursuant to the terms of his OLAP contract and diagnosed him with

adjustment disorder with anxiety and depression as well as, subsequently, ADHD. While he testified that Vardiman's anxiety and depression had subsided, he described Vardiman's ADHD as an "inborn neurological problem" that caused him to have trouble controlling behavior that had previously been masked by his high intellectual functioning. Walker noted that Vardiman had a history of oversights, distractibility, and impulsivity in terms of trying to take shortcuts and speed things up and testified that his ADHD was the primary cause of these behaviors and his ethical misconduct. He reported that Vardiman was a "very compliant" and "highly motivated" patient and opined that as long as he continues to get proper medical and mental-health treatment, Vardiman can practice law in a competent, ethical, and professional manner. Based on Walker's testimony, the board found that Vardiman's ADHD qualified as an additional mitigating factor pursuant to Gov.Bar R. V(13)(C)(7).[3]

{¶ 15} As evidence in aggravation, the board cited Vardiman's failure to seek assistance for his mental-health conditions until after the first formal disciplinary complaint was served upon him and his subsequent failure to disclose to his treating psychologist the misconduct alleged in the second complaint. *See* Gov.Bar R. V(13)(A) ("In determining the appropriate sanction, the Board shall consider all relevant factors * * *").

{¶ 16} Vardiman argued that in light of his causally related mental-health condition, a fully stayed one-year suspension is the appropriate sanction for his misconduct. The Cincinnati Bar Association, in contrast, recommended that at a minimum, he serve an actual suspension of one year.

---

[3] In order for a disorder to qualify as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7), there must be (a) a diagnosis by a qualified health-care professional, (b) a causal relationship between the disorder and the misconduct, (c) a sustained period of successful treatment, and (d) a prognosis from a qualified health-care professional that the attorney will be able to return to the competent, ethical, and professional practice of law.

**{¶ 17}** The Warren County Bar Association did not recommend a specific sanction but identified five cases in which we imposed sanctions ranging from a six-month actual suspension to an indefinite suspension for misconduct involving false or fraudulent signatures on legal documents. *See Disciplinary Counsel v. Bogdanski*, 135 Ohio St.3d 235, 2013-Ohio-398, 985 N.E.2d 1251 (imposing an indefinite suspension on an attorney who abandoned two clients, forged a client's signature on an affidavit, notarized that signature, submitted the forged document to the court, and failed to cooperate in the resulting disciplinary investigation); *Cincinnati Bar Assn. v. Farrell*, 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800 (imposing a two-year suspension, with the second year stayed on conditions, on an attorney who forged his wife's signature on a power of attorney, used the power of attorney to obtain a line of credit, and then engaged in additional fraudulent conduct in an effort to conceal his wrongdoing); *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429 (imposing a one-year suspension, with six months stayed on conditions, on an attorney who advised his client to forge his incapacitated grandmother's signature on a backdated power of attorney, notarized the forged signature, and instructed his secretary to sign the document as a witness); *Disciplinary Counsel v. Herman*, 99 Ohio St.3d 362, 2003-Ohio-3932, 792 N.E.2d 1078 (imposing a one-year suspension, with six months stayed, on an attorney who entered a no-contest plea to a charge of attempted tampering with evidence for altering two qualified domestic-relations orders after the opposing party and his counsel had signed them); and *Lake Cty. Bar Assn. v. Speros*, 73 Ohio St.3d 101, 652 N.E.2d 681 (1995) (imposing a six-month suspension on an attorney who filed an affidavit in court bearing the forged signature of a notary and containing a false statement claiming that his failure to timely file an appellate brief was the result of a clerical error).

**{¶ 18}** Having considered Vardiman's misconduct, the applicable aggravating and mitigating factors, and the sanctions imposed in *Bogdanski*,

*Farrell*, *Shaffer*, *Herman*, and *Speros*, the board recommends that we suspend Vardiman for one year with six months stayed on the conditions that he comply with the terms of his OLAP contract, maintain appropriate medical and psychological treatment, submit quarterly reports documenting his compliance with the foregoing obligations to a monitoring attorney selected by relators, and engage in no further misconduct.

{¶ 19} After a thorough review of the record and the cases cited by the board, we find that the facts of *Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429, are most analogous to the facts now before us. Shaffer discovered that the power of attorney a client's grandmother had executed in favor of his client prior to her incapacity expressly prohibited the client from transferring her real property. *Id.* at ¶ 3, 5. Rather than seek a legal declaration of incompetence and the appointment of a guardian, Shaffer (1) prepared a new power of attorney that authorized the transfer of real estate, (2) backdated it to before the time of the grandmother's incapacity, (3) advised his client to forge his grandmother's signature, (4) notarized that forgery, (5) instructed his secretary to sign the document as a witness, (6) helped his client close on the sale of the property, representing that the title was marketable, and (7) filed the deed and the fraudulent power of attorney in the county recorder's office. *Id.* at ¶ 5-6.

{¶ 20} We found that Shaffer engaged in a multistep process to defraud the court system and the public, sidestepping safeguards intended to protect sellers and buyers of real estate, and that his conduct warranted an actual suspension from the practice of law. *Id.* at ¶ 13-14. And we determined that a one-year suspension, with the final six months stayed on conditions, was commensurate with his offense. *Id.* at ¶ 9.

{¶ 21} While Vardiman's misconduct consisted of filing one or more fraudulent documents in two different courts rather than a multistep scheme to defraud, we agree that it is comparable in nature and severity to Shaffer's

misconduct. And while Shaffer was ostensibly motivated by his desire to assist his client, who was caring for his incapacitated grandmother, Vardiman's conduct was at least partially driven by his recently diagnosed ADHD, which his treating psychologist described as an "inborn neurological problem." Given Vardiman's acceptance of responsibility for his actions; his active participation in OLAP and effective treatment of this disorder; and numerous letters attesting to his good character, reputation, and professional competence, we agree that a one-year suspension, with the final six months stayed on conditions, is the appropriate sanction for his misconduct.

{¶ 22} Accordingly, Edwin Lowe Vardiman Jr. is suspended from the practice of law in Ohio for one year, with the final six months stayed on the conditions that he comply with the terms of his OLAP contract, maintain appropriate medical and psychological treatment, submit quarterly reports documenting his compliance with the foregoing obligations to a monitoring attorney selected by relators, and engage in no further misconduct. If Vardiman fails to comply with these conditions, the stay will be lifted, and he will serve the full one-year suspension. Costs are taxed to Vardiman.

Judgment accordingly.

PFEIFER, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'CONNOR, C.J., and O'DONNELL and O'NEILL, JJ., dissent and would not stay any portion of the suspension.

_____

Bruce A. McGary and John S. Mengle, Bar Counsel, for relator Warren County Bar Association.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Michael P. Foley; and Edwin W. Patterson III, General Counsel, for relator Cincinnati Bar Association.

Cline, Mann & Co., L.P.A., William Mann, and Richard A. Cline, for respondent.

_____